UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE APPLICATION OF Sakab Saudi Holding
Company, Alpha Star Aviation Services Company, Enma
Al Ared Real Estate Investment and Development
Company, Kafa'at Business Solutions Company,
Security Control Company, Armour Security Industrial
Manufacturing Company, Saudi Technology & Security
Comprehensive Control Company, Technology Control
Company, New Dawn Contracting Company, and Sky
Prime Investment Company,

For Order Pursuant to 28 U.S.C. § 1782 for the Issuance
of Subpoenas to Citibank NA, HSBC Bank USA NA,
Cadwalader, Wickersham & Taft LLP, and Jonathan
Wainwright, Esq.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Misc. Civil Action No _____

# MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

Jonathan S. Sack
Joshua Bussen
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND .................................................................................................... 2

    I.    Al Jabri and the Group Companies ....................................................... 2

    II.   Al Jabri's Ouster and Discovery of the Fraud ....................................... 3

    III.  The Tracing of Stolen Funds ................................................................. 5

    IV.  The New East Entities .......................................................................... 5

    V.   1147848 B.C. Ltd and the Bridle Path Property (Canada) ..................... 10

    VI.  The Proposed Subpoenas ...................................................................... 10

ARGUMENT ...................................................................................................... 12

    I.    THE COURT SHOULD GRANT THE APPLICATION AS A MATTER OF
         COMITY ........................................................................................... 12

    II.   THE PETITION SATISFIES THE STATUTORY REQUIREMENTS OF
         SECTION 1782 ................................................................................. 13

         A.   Each of the Proposed Subpoena Recipients Resides and/or Is Found in
             this District ................................................................................. 14

         B.   The Discovery Sought Is for Use in a Proceeding Before a Foreign
             Tribunal ..................................................................................... 15

         C.   Applicants Are "Interested Persons" for Purposes of the Contemplated
             Foreign Proceeding .................................................................... 15

    III.  THE FOUR DISCRETIONARY FACTORS ALL WEIGH IN FAVOR OF
         GRANTING THE REQUESTED DISCOVERY ................................... 16

         A.   Citibank NA, HSBC Bank USA NA, Cadwalader, and Mr. Wainwright
             Are Not Parties to the Canadian Action .................................... 16

         B.   The Canadian Court Has Explicitly Requested Assistance .................... 17

         C.   Applicants Are Not Seeking To Circumvent Canadian Proof-Gathering
             Restrictions ................................................................................ 17

         D.   The Requested Discovery Is Narrowly Tailored and Is Not Unduly
             Intrusive or Burdensome ........................................................... 18

CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Application of Gianoli*,
  3 F.3d 54 (2d Cir. 1993) ............................................................................................. 1

*Bankers Trust Co. v. Shapira and Others*, [1980],
  1 W.L.R. 1274 (C.A.) ................................................................................................ 11

*Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15-cv-8974 (LGS),
  2019 WL 859042 (S.D.N.Y. Feb. 22, 2019) .............................................................. 14

*Cornfeld v. Inv'rs Overseas Servs., Ltd.*,
  471 F. Supp. 1255 (S.D.N.Y. 1979) .......................................................................... 13

*Finanz AG Zurich v. Banco Economico S.A.*,
  192 F.3d 240 (2d Cir. 1999) ...................................................................................... 12

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
  270 F. Supp. 3d 716 (S.D.N.Y. 2017) ....................................................................... 14

*In re Application of Hill*,
  2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ............................................................ 17

*In re Application of Sveaas*,
  249 F.R.D. 96 (S.D.N.Y. 2008) ................................................................................. 15

*In re Aso*,
  2019 WL 2345443 (S.D.N.Y. June 3, 2019) ............................................................. 17

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) ...................................................................................... 14

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002) ...................................................................................... 14

*In re Ex Parte Application of Porsche Automobil Holding SE*,
  2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ............................................................. 18

*In re Letters Rogatory from Caracas, Venezuela, SA. Concerning Cecilia Matos*,
  1998 WL 16004 (S.D.N.Y. Jan. 13, 1998) .................................................................. 1

*In re Microsoft*,
  428 F. Supp.2d 188 (S.D.N.Y. 2006) ........................................................................ 12

*In re WinNet R CJSC*, No. 16-mc-484,
    2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) ........................................................ 16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ...........................................................................................Passim

*Purolite Corp. v. Hitachi Am., Ltd.*,
    2017 WL 1906905 (S.D.N.Y. May 9, 2017) ........................................................ 15

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) .................................................................................. 13

**Statutes**

28 U.S.C. § 1782...................................................................................................Passim

This Memorandum of Law is submitted in support of an *ex parte* application for an order granting leave to serve subpoenas for bank account and related records from two financial institutions—Citibank NA and HSBC Bank USA NA—and for non-privileged corporate and financial transfer-related records from Cadwalader, Wickersham & Taft LLP ("Cadwalader"), and Jonathan Wainwright, Esq., senior counsel to Cadwalader.[1]

## PRELIMINARY STATEMENT

Section 1782 of Title 28 authorizes "[t]he district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  As set forth below, Applicants are the plaintiffs in an action in the Superior Court of Justice in Ontario, Canada (the "Canadian Action"), where they allege that the defendants in that case have defrauded them out of billions of dollars.  On January 22, 2021, the Honorable Cory Gilmore of the Superior Court of Justice in Ontario, Canada, issued an order (the "January 22 Order," which is attached as Exhibit 1 to the Schiff Declaration) requiring, among other things, Citibank NA, HSBC Bank USA NA, Cadwalader, and Jonathan Wainwright to produce the records described more fully below, and requesting judicial assistance from the courts of the United States to give effect to her order.

The Canadian Action is about a massive fraudulent scheme directed and carried out by a former high-ranking government official of the Kingdom of Saudi Arabia ("KSA"), Saad Khalid Al Jabri, which resulted in theft and diversion from the Applicants of billions of dollars.  As a KSA official, Al Jabri was tasked with establishing private companies that would provide

---

[1]     Section 1782 applications routinely are granted on an *ex parte* basis.  *See, e.g.*, *Application of Gianoli*, 3 F.3d 54, 55 (2d Cir. 1993) (approving *ex parte* grant of § 1782 application); *In re Letters Rogatory from Caracas, Venezuela, SA. Concerning Cecilia Matos*, No. M15-377 (MBM), 1998 WL 16004, at *1 (S.D.N.Y. Jan. 13, 1998) (Mukasey, J.).

counter-terrorism services to the KSA in return for payments from the KSA.  However, from 2008 to 2016, Al Jabri fraudulently diverted billions of dollars from those private companies—to date, at least $3.5 billion—with much of it going to himself, his family, and his friends.  Those funds have since been scattered around the globe in various investments.

As relevant to this case, Al Jabri and his family used proceeds of the fraudulent scheme to purchase substantial real estate in the United States and Canada.  The subpoenas requested in this application are directed to entities and one individual—Citibank NA, HSBC Bank USA NA, Cadwalader, and Jonathan Wainwright—who were involved in the diversion of stolen funds, including the purchase of real estate.  The requested Subpoenas seek the following:

- From ***Citibank NA***, Applicants seek account information for one bank account held by Khalid Saad Khalid Al Jabri (Al Jabri's son), who received and purchased properties with funds misappropriated from Applicants;

- From ***HSBC Bank USA NA***, Applicants seek account information for five bank accounts, four of which are held by four "New East" entities (New East (US) Inc., New East 804 805 LLC, New East Back Bay LLC, and New East DC LLC), which, as explained further below, were used by Al Jabri (with the assistance of Mr. Wainwright and/or Cadwalader) to purchase real estate in the United States, and one of which is held by Al Jabri;

- From ***Cadwalader***, Applicants seek non-privileged information regarding the four "New East" entities, each of which identified Cadwalader as either the business address or as the address of an officer or manager of the entity; and

- From ***Mr. Wainwright***, Applicants seek non-privileged documents relating to (i) a business entity in British Columbia, 1147848 B.C. Ltd., of which he is the sole director, and (ii) a property purchased by that entity, located at 14 The Bridle Path in Toronto, which has been listed as the registered address of Khalid Al Jabri.

## BACKGROUND

### I.     Al Jabri and the Group Companies

On December 27, 2007, King Abdullah Abdulaziz of the KSA signed Royal Instruction 19134/B (the "Royal Instruction"), which was addressed to the Minister of Interior at that time.  Royal Instruction 19134/B increased the percentage of funding for the KSA's Ministry of Interior's annual activities and expressly stipulated that the amount was to be used to "fight

2

terrorism activities as the situation and public interest require." The Royal Instruction further stated that the funding could be used to "establish and fund investment intermediaries in the private sector as His Royal Highness sees [fit] to serve the public interest." Al Jabri, at that time, was a government official in the KSA's Ministry of Interior, a government body tasked with, among other things, national security. (Schiff Decl. ¶¶ 4, 22-24.)

In accordance with the Royal Instruction, on January 19, 2008, Prince Mohammed Bin Nayef wrote a letter to Al Jabri and another man (Abdullah Alhammad), which requested that they establish private companies in the technological and aviation security sectors. The letter also informed Al Jabri (and Alhammad) that they would receive 5% of the net profits of the Group Companies. Pursuant to that letter, from 2008 through 2016, Al Jabri directed the incorporation of 17 companies (the "Group Companies"), each purportedly to carry out counter-terrorism activities. Those companies were funded by the KSA. The plaintiffs in the Canadian Action (Applicants here) are 10 of those 17 companies. (Schiff Decl. ¶¶ 5, 23-24.)

## II.    Al Jabri's Ouster and Discovery of the Fraud

Al Jabri was relieved of his official duties in 2015. In May 2017, Al Jabri left the KSA after the KSA commenced an anti-corruption enforcement initiative. In September 2017, Al Jabri moved to Canada and, upon information and belief, he and certain members of his family currently reside in Toronto, Ontario. (Schiff Decl. ¶¶ 15, 25.)

On January 3, 2018, the Public Investment Fund of Saudi Arabia ("PIF") formed Tahakom Investments Company ("TIC") to operate as a holding company for the Group Companies. The ownership of the Group Companies was transferred to TIC between February and May of 2018. In connection with the decision to bring the Group Companies under common ownership, the PIF engaged Ernst & Young LLP ("EY") to perform a due diligence review and valuation of six of the Group Companies. In the course of EY's due diligence review, a number

of irregularities were identified and were reported to PIF on January 28, 2018.  In response, PIF engaged Deloitte Professional Services (DIFC) Limited ("Deloitte") to perform a forensic review of the issues identified by EY.  (Schiff Decl. ¶¶ 26-29.)

Deloitte conducted an extensive forensic review and issued multiple reports between October 2018 and January 2021.  In the course of its review, Deloitte identified a number of illegitimate transfers, related party and intercompany transactions, and the operation of certain of the Group Companies as a "clearinghouse for payments."  It also found that large amounts of money taken from the Group Companies had been moved outside the KSA, frequently to offshore jurisdictions where, in a number of cases, the money was then used to fund purchases of substantial real estate holdings.  Indeed, it "appeared that Al Jabri, along with his close friends and family members, had embezzled vast amounts and secreted them away."  In a January 18, 2021 report, Deloitte found that Al Jabri and the others had misappropriated more than $3.5 billion from the Group Companies.  (Schiff Decl. ¶¶ 28-29.)

To effectuate this fraudulent scheme, Al Jabri used a network of close friends, associates, and family members to carry out the theft.  Al Jabri's fraudulent scheme, spanning multiple countries and nearly a decade, worked generally as follows:  first, Al Jabri or an associate would establish the Group Companies ostensibly to carry out anti-terrorism activities on behalf of the Ministry of Interior; second, Al Jabri arranged for the Group Companies to be funded by the KSA; and finally, he would siphon money away from the Group Companies by, among other things, installing close friends and family members as "nominee shareholders" in order to provide them with profits and/or directly transferring money from the Group Companies to himself, his family, and his friends.  (Schiff Decl. ¶ 7.)

Although the letter from Prince Bin Nayef had authorized Al Jabri to earn 5% of the net profits of the Group Companies, Al Jabri took vastly more than that.  And, in any event, as a

government employee, Al Jabri was prohibited by KSA law from accepting any source of income from a private company.  (Schiff Decl. ¶ 24.)

## III.    The Tracing of Stolen Funds

The Group Companies, with the assistance of Deloitte and others, have sought to trace the funds that Al Jabri and his family stole and then diverted by acquiring various properties around the world.  Through their investigation, the plaintiffs in the Canadian Action (with the help of Deloitte and others) have discovered the following, in substance, about the persons for whom subpoenas are being sought:

- **Jonathan Wainwright, Esq.**, has been involved in various real estate transactions funded with money stolen from the Group Companies.  Mr. Wainwright served as an officer for certain "New East" companies, discussed further below, as well as the sole director of 1147848 B.C. Ltd., each of which was funded by Al Jabri in order to purchase real estate in the United States and/or Canada;

- **Cadwalader**, the law firm where Mr. Wainwright is Senior Counsel, is identified as the business address for various directors of business entities controlled and funded by Al Jabri (particularly, the New East entities), which were used to purchase property in the United States; and

- **Citibank NA** and **HSBC Bank USA NA** maintain specific accounts which were used by these entities, Al Jabri, and his family, to hold and transfer money stolen and diverted as part of the fraudulent scheme.

## IV.    The New East Entities

Al Jabri used funds misappropriated from the Group Companies to purchase real estate in the United States worth approximately $28 million.  Al Jabri and his family used a set of related companies, each having "New East" in the name, to purchase and hold this valuable real estate. Each of these New East entities was funded with money wrongfully obtained from the Group Companies.  Mr. Wainwright serves in a variety of positions for these companies, including as secretary, vice-president, director, manager, and "business contact person."  (Schiff Decl. ¶¶ 31-46.)

*New East (US) Inc. and New East 804 805* are entities that collectively own five properties located in a luxury condominium building developed by Ritz Carlton in Boston, Massachusetts.  (Schiff Decl. ¶ 32.)

New East (US) Inc. was incorporated on March 14, 2013 in Delaware and registered to do business in Massachusetts on March 28, 2013.  The Certificate of Registration identified Al Jabri as the President and a Director, and his son, Khalid Al Jabri, as the Vice-President, Treasurer, and a Director.  The business address for each was listed as the office of Mr. Wainwright of Cadwalader, who was also listed as the Secretary of the company.  The Annual Reports filed in Massachusetts for New East (US) Inc. from 2017 and 2019 confirm that at some point between filings made on April 6, 2017 and March 7, 2019, changes were made to remove Al Jabri from the corporation and to appoint Mohammed Al Jabri (Al Jabri's son) as President and Director of New East (US) Inc.  At some point between the reporting dates of March 7, 2019 and March 16, 2020, Mohammed Al Jabri was removed as President and Director and replaced with his brother, Khalid Al Jabri, who lists his address as that of Cadwalader's New York office.  According to a Business Entity Summary for New East (US) Inc. obtained on October 29, 2020, Mr. Wainwright is identified as now holding the role of Vice-President and Director.  (Schiff Decl. ¶¶ 33-35.)

New East 804 805 LLC was established pursuant to the laws of Massachusetts on April 30, 2013.  The Certificate of Organization lists the office address for New East 804 805 at which records would be maintained as 580 Washington Street, Penthouse 1, Boston MA 02111 (a property which is owned by New East (US) Inc.), and lists the company's managers (and the individuals with signing authority) as Al Jabri, Khalid Al Jabri, and Mr. Wainwright.  The registered address for each was that of Cadwalader's New York office.  According to the LLC's 2019 Annual Report, Al Jabri was later replaced as manager and authorized signatory for the

6

company by his son, Mohammed Al Jabri (with Cadwalader's New York address listed).  The 2020 Annual Report for New East 804 805 identifies the company's managers as of that date as Mohammed Al Jabri, Khalid Al Jabri, and Mr. Wainwright, with the address for each as Cadwalader.  (Schiff Decl. ¶¶ 36-39.)

On December 11, 2013, in the same year both New East (US) Inc. and New East 804 805 LLC were established, a Cadwalader employee (Allison Overgaard) emailed employees at the HSBC Private Bank Relationship Manager, Saudi Desk, copying Mr. Wainwright, and requesting that HSBC wire $6,075,000 to New East (US) Inc.  Then, on December 12, 2013, Al Jabri (using the email address aljabri@grc.ae) sent an email that enclosed a signed letter of instruction to transfer $6,075,000 from an HSBC Geneva account to New East (US) Inc. at an account at HSBC Bank USA bearing account number 0605184364.  New East (US) Inc. and New East 804 805 then acquired five properties on December 18, 2013.  (Schiff Decl. ¶ 38.)

Deloitte has traced several payments from an account held by Al Jabri bearing account number SA1450000000010374772001 to an account in the name of New East (US) Inc. at HSBC Bank USA bearing account number 0605184364 totaling SAR 14,995,066 as follows:  (a) on January 28, 2014, Al Jabri transferred SAR 1,126,560; (b) on February 11, 2014 Al Jabri transferred SAR 150.2; (c) on July 22, 2015, Al Jabri transferred SAR 13,192,149.75; and (d) on January 1, 2017, Al Jabri transferred SAR 676,206.  (Schiff Decl. ¶ 35.)

Deloitte has also traced payments from an account held by Al Jabri bearing account number SA1450000000010374772001 to an account in the name of New East 804 805 at **HSBC Bank USA** bearing account number 0605184356 totaling SAR 1,126,710.20 as follows: (a) on January 28, 2014, Al Jabri transferred SAR 1,126,560; and (b) on February 11, 2014 Al Jabri transferred SAR 150.2.  (Schiff Decl. ¶ 39.)

*New East Back Bay LLC* owns three properties.  According to the Certificate of Organization, New East Back Bay LLC was established under the laws of Massachusetts on June 23, 2015.  The Certificate of Organization listed Al Jabri, Khalid Al Jabri, and Mr. Wainwright as managers.  The registered business address for Al Jabri and Khalid Al Jabri at that time is listed as 580 Washington Street, Penthouse 1, Boston (a property that is owned by New East (US) Inc.).  The LLC's Annual Reports reflect that, at some point between the reporting dates of March 12, 2018 and March 7, 2019, Mohammed Al Jabri was added as a manager.  Then, at some point between March 7, 2019 and June 23, 2020, Al Jabri and Mohammed Al Jabri ceased to be managers or authorized signatories of New East Back Bay, and were replaced by the Swiss lawyer, Leonhard Toenz.  The 2020 Annual Report identifies the current managers and signatories as Khalid Al Jabri, Mr. Wainwright, and Leonhard Toenz.  According to the 2020 Annual Report, the corporation's principal office is now Cadwalader's address in New York. (Schiff Decl. ¶¶ 40-42.)

Two years after incorporation, New East Back Bay purchased 776 Boylston Street, Unit W10-C in Boston on April 10, 2017.  The Unit Deed and Assessment for that unit reflects that the mailing address for the title holder is identified as c/o Mr. Wainwright, One World Trade Financial Center, New York, New York 10281 where Cadwalader has its New York office. Deloitte has traced a payment on February 13, 2017, two months prior to the acquisition of 776 Boylston Street, of SAR 1,181,880 from a KSA account number held by Al Jabri to an account in the name of New East Back Bay at HSBC Bank USA bearing account number 0605183929.[2] New East Back Bay purchased two more properties, each in Boston at One Dalton Place, on September 10, 2019.  (Schiff Decl. ¶¶ 40-42.)

---

[2]        SAR is the currency abbreviation for the Saudi Riyal, which is the official currency of Saudi Arabia.

**New East DC LLC** was established pursuant to the laws of the District of Columbia on May 20, 2014. According to a Washington, D.C. Entity Summary, Mr. Wainwright of Cadwalader is designated as the business contact person, holding a governance role, and the address for New East DC's contact person is c/o Cadwalader, One World Financial Center, New York, NY 10281. That Entity Summary also lists the business address as Cadwalader's address. An alternative mailing address for New East DC LLC is a property located in Montreal, Quebec that was purchased by Khalid Al Jabri, Al Jabri's son, on May 28, 2010. (Schiff Decl. ¶¶ 43-46.)

On August 28, 2008, Al Jabri purchased, in his own name, a property in the Millennium Square Condominium building (affiliated with the Ritz Carlton) located at 1111 23rd Street, NW, in Washington, D.C. A Debit Advice statement dated August 26, 2008 from HSBC Private Bank (Suisse) SA indicates that Al Jabri instructed HSBC to debit $1,500,000 from the account to the beneficiary of the Attorney Trust Account (IOLTA III) of a real estate attorney in the Washington, D.C. area. (Schiff Decl. ¶ 45.)

On August 5, 2014, Al Jabri executed a Special Warranty Deed, with instructions thereon for a copy to be sent to Mr. Wainwright at Cadwalader; the unit was then transferred from Al Jabri to New East DC for consideration of $10. Deloitte has traced a payment on December 7, 2014 of SAR 433,314.70 from an account controlled by Al Jabri to an account in the name of New East DC at HSBC Bank USA, bearing account number 0605187223. A statement of account from HSBC Premier (DC) for Al Jabri bearing account number 389-09170-7, for the period of July 18, 2009 through August 19, 2009, reflects payments to Pepco (a Washington, D.C. utilities company) and a $1,881.19 payment to Colonial Bank for "Maint[enance] Pymt." These payments may relate to the Washington, D.C. property owned by Al Jabri. (Schiff Decl. ¶ 46.)

## V.     1147848 B.C. Ltd and the Bridle Path Property (Canada)

Al Jabri used funds to purchase properties in Canada with the assistance of Mr. Wainwright and/or Cadwalader.  Mr. Wainwright is the sole director of an entity located in British Columbia named 1147848 B.C. Ltd., which was incorporated in January 2018 pursuant to the laws of British Colombia.  The British Columbia Company Summary for 1147848 B.C. Ltd. identifies Mr. Wainwright as the sole director of the company and gives as a mailing and delivery address Cadwalader's office in New York.  (Schiff Decl. ¶¶ 47-49.)

On February 28, 2018, 1147848 B.C. Ltd. purchased a property located at 14 The Bridle Path in Toronto.  Documents registered to the Bridle Path Property's title note that Mr. Wainwright was "the authorized agent or solicitor acting in this transaction for 1147848 B.C. Ltd."  The Bridle Path Property has been identified by Khalid Al Jabri, Al Jabri's son, as his registered address.  (Schiff Decl. ¶ 49.)

## VI.    The Proposed Subpoenas

On January 22, 2021, Justice Gilmore of the Superior Court of Justice in Ontario issued an order which required Citibank NA, HSBC Bank USA NA, Mr. Wainwright and Cadwalader to produce documents to plaintiffs in the Canadian Action relating to Al Jabri's theft from the Group Companies.

As to *Citibank NA* and *HSBC Bank USA NA*, Justice Gilmore ordered disclosure and production of records relating to the specific accounts set forth in the January 22 Order, as well as any other accounts owned or operated, directly or indirectly, for the individuals and corporations identified therein.

As to *Mr. Wainwright*, Justice Gilmore ordered disclosure of (a) any Financial Institution Records in his possession pertaining to 1147848 B.C. Ltd., of which Mr. Wainwright was the sole director; (b) any non-privileged records tracing the flow of

funds used to acquire the Bridle Path Property; and (c) any other non-privileged records pertaining to the Bridle Path Property in his possession, including but not limited to records pertaining to rental or other income derived from the Bridle Path Property.

As to *Cadwalader*, Justice Gilmore ordered disclosure of (a) non-privileged records tracing the flow of funds used to acquire the properties owned by New East (US) Inc., New East 804 805 LLC, New East Back Bay LLC, and New East DC LLC, including from which party and from what source, including account information; (b) any non-privileged records pertaining to real property owned by New East (US) Inc., New East 804 805 LLC, New East Back Bay LLC, and New East DC LLC, including but not limited to information pertaining to any rental or other income generated therefrom; and (c) copies of the share registers, corporate registries and minute books for New East (US) Inc., New East 804 805 LLC, New East Back Bay LLC, and New East DC LLC. (*See* January 22 Order ¶¶ 7, 12, 16.)

In the January 22 Order, Justice Gilmore specifically requests assistance of the courts of the United States to give effect to the terms of the January 22 Order.  (*See* January 22 Order ¶ 32.)[3]  The present Application seeks leave to serve subpoenas on Citibank NA, HSBC Bank USA NA, Cadwalader, and Mr. Wainwright to require them to produce the materials set forth in the January 22 Order.

---

[3]     This type of order, premised on the House of Lords' decision in *Norwich Pharmical Company v. Comm'r of Customs and Excise*, [1974] A.C. 133 (U.K. H.L.), is available in Canada and other Commonwealth countries. *See Isofoton SA. v. Toronto Dominion Bank* (2007), 282 D.L.R. 4th 325 (Can. Ont. Sup. Ct. J.) (granting *Norwich Pharmacal* order); *Bankers Trust Co. v. Shapira and Others,* [1980] 1 W.L.R. 1274 (C.A.) (reversing lower court and granting order under *Norwich Pharmacal* line of cases).

**ARGUMENT**

The Court should grant the Applicants' Section 1782 application as a matter of comity.

Further, the Court should grant the application because it meets the statutory requirements for

relief under Section 1782 and the discretionary factors weigh in favor of granting the application.

## I.   THE COURT SHOULD GRANT THE APPLICATION AS A MATTER OF COMITY

The principles of comity warrant deference to the Ontario Superior Court of Justice's

January 22 Order.  Comity is "the recognition which one nation allows within its territory to the

. . . judicial acts of another nation . . . .  Under this principle, United States courts ordinarily . . .

defer to proceedings taking place in foreign countries so long as the foreign court had proper

jurisdiction and enforcement does not prejudice the rights of United States citizens or violate

domestic public policy." *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d

Cir. 1999) (citations and quotation marks omitted).

Considerations of comity weigh heavily in applications under Section 1782.  *See Intel*

*Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 261 (2004).  For example, in *In re*

*Microsoft*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006), Microsoft sought discovery in aid of a

proceeding before the European Commission.  *Id.*  The European Commission objected to the

discovery sought, and the court denied the application finding that it was little more than an end

run around the Commission's rules and policies.  *Id.* at 194-95.  In doing so, the court recognized

that granting the application would "pit[] this Court against the Commission, rather than

fostering cooperation between them."  *Id.* at 195-96.

Here, we are presented with the other side of the coin.  The Superior Court of Justice,

which has jurisdiction over civil disputes in Ontario, has specifically requested

> the judicial assistance of the appropriate courts of . . . the United States to give
> effect to this Order . . . by taking whatever steps may be necessary and permissible

> in that jurisdiction to require the entities and individuals set out in this Order and associated Schedules to disclose and produce to the Plaintiffs and / or their counsel . . . the documents the Plaintiffs [are] entitled to examine pursuant to this Order.

(*See* January 22 Order ¶ 32.)

Here, authorizing Applicants to serve subpoenas on the requested parties will promote comity by recognizing the judicial orders of a court in a well-established, neighboring common law jurisdiction.  *See Cornfeld v. Inv'rs Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y.) ("The fact that the foreign country involved is Canada is significant.  It is well-settled in New York that the judgments of the Canadian courts are to be given effect under principles of comity." (quotation marks omitted)), *aff'd*, 614 F.2d 1286 (2d Cir. 1979).  Granting Applicants leave to serve these subpoenas will not violate domestic policy, and the parties whose records are sought will have the opportunity to challenge their use in future proceedings in Canada.

In sum, principles of comity warrant deference to the Ontario Superior Court of Justice and granting the present application.

## II.   THE PETITION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Section 1782 authorizes federal district courts to order discovery to assist applicants in obtaining evidence in the United States for use in foreign proceedings.  *See* 28 U.S.C. § 1782. To obtain discovery under Section 1782, an applicant must satisfy three statutory requirements. Specifically, the applicant must show that (i) the party from which discovery is sought "resides or is found" in the district where the application is brought; (ii) the discovery sought is for "use" in a pending or contemplated foreign proceeding before a foreign or international tribunal; and (iii) the application is made by a foreign or international tribunal or an "interested person."  28 U.S.C. § 1782; *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004).  As shown below, this application meets each of these requirements.

A.    **Each of the Proposed Subpoena Recipients Resides and/or Is Found in this District**

The Applicants satisfy the first statutory requirement because Citibank NA, HSBC Bank USA NA, Cadwalader, and Mr. Wainwright each reside and/or can be found in this District.  A federal court's authority to compel discovery under Section 1782 extends to any "person"—including both individuals and entities—that "resides or is found" in the district over which the court presides.  28 U.S.C. § 1782(a).  An entity is "found" within a district for purposes of section 1782 when that entity is physically present in the district.  *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("[I]f a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a) he is 'found' in that district").   The Second Circuit Court of Appeals recently clarified:  "resides or is found in" "extends to the limits of personal jurisdiction consistent with due process."  *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).

Here, each of the entities—Citibank NA, HSBC Bank USA NA, Cadwalader—has its principal places of business in New York and may be served here.[4]  Mr. Wainwright is Senior Counsel to Cadwalader and works in the firm's New York office.  Moreover, while he has been working in that office, Cadwalader has been identified as the business address for multiple of Al Jabri's entities and/or the business address for those entities' officers, including Mr. Wainwright.  Accordingly, the first prong of the test is satisfied.

---

[4]     *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 725 n.8 (S.D.N.Y. 2017) ("Citibank, N.A. is a national banking association, organized under the laws of the United States, and has its principal place of business in New York City . . . ."); *Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15-cv-8974 (LGS), 2019 WL 859042, at *3 (S.D.N.Y. Feb. 22, 2019) ("The Court takes judicial notice that HSBC Securities (USA) Inc. is headquartered in New York."); *About Cadwalader*, Cadwalader.com/about/notices (last visited Feb. 4, 2021) ("Cadwalader, Wickersham & Taft LLP (the "Firm") is a registered limited liability partnership under the laws of the State of New York, USA, with its principal place of business at 200 Liberty Street, New York, NY 10281.").

**B.      The Discovery Sought Is for Use in a Proceeding Before a Foreign Tribunal**

Applicants satisfy the second statutory requirement because they are seeking the requested discovery for "use" in a "proceeding in a foreign . . . tribunal."  28 U.S.C. § 1782.

First, the Canadian court qualifies as a "foreign . . . tribunal."  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004) (The "term tribunal . . . includes . . . conventional civil, commercial, criminal, and administrative courts" (quotation marks omitted)).

Second, the case has already been filed in Canada.  Accordingly, a proceeding is pending.

Third, Section 1782's "for use" requirement is *de minimis*.  The party seeking discovery need only show that the discovery will be employed to some advantage in the proceeding.  *See In re Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (holding the "for use" requirement is a "broadly permissive standard").  Here, the evidence to be collected pursuant to the subpoena relates directly to the funds misappropriated and transferred by Al Jabri and used by him and associates to acquire property.  This evidence is plainly relevant because the Canadian court has already ruled that the Applicants are entitled to it.  (*See* January 22 Order.)

Accordingly, the second prong of the test is satisfied.

**C.      Applicants Are "Interested Persons" for Purposes of the Contemplated Foreign Proceeding**

The final statutory requirement has also been met.  Applicants here are the plaintiffs in the Canadian Action.  Accordingly, they are "interested persons" for purposes of Section 1782.  *See Purolite Corp. v. Hitachi Am., Ltd.*, No. 17-misc-67, 2017 WL 1906905, at *3 (S.D.N.Y. May 9, 2017) (Engelmayer, J.) (holding that the plaintiff in the foreign action qualifies as an "interested person" for § 1782 purposes), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).

In sum, the application before the Court satisfies all three statutory elements of Section 1782, and the Court may order the requested discovery in its discretion.

III.   **THE FOUR DISCRETIONARY FACTORS ALL WEIGH IN FAVOR OF GRANTING THE REQUESTED DISCOVERY**

The Court should exercise its discretion to grant the application.  The Supreme Court has identified several non-exclusive factors that a district court should consider in exercising its discretion under Section 1782: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the person seeking discovery is attempting to use Section 1782 to circumvent discovery restrictions or policies in the forum country; and (iv) whether the discovery requests are "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).  Courts in this District have held that the "decision to deny a § 1782 application may not be taken lightly" and that Section 1782 applications are denied based on the discretionary factors only in "unusual cases."  *In re WinNet R CJSC*, No. 16-mc-484, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017).  Here, each of the discretionary factors weighs in favor of granting Applicant's requested discovery.

A.   **Citibank NA, HSBC Bank USA NA, Cadwalader, and Mr. Wainwright Are Not Parties to the Canadian Action**

The first discretionary factor favors the applicant when the individual or entity from which discovery is sought will not be a participant in the contemplated foreign proceeding.  *See Intel*, 542 U.S. at 264.  Courts are more inclined to grant Section 1782 applications when the party from which discovery is sought is not (or will not be) a party to the foreign proceeding because non-parties "may be outside the foreign tribunal's jurisdictional reach; hence, their

16

evidence . . . may be unobtainable absent § 1782(a) aid." *Id.*; *In re Aso*, No. 19-mc-190, 2019 WL 2345443, at *5 (S.D.N.Y. June 3, 2019) ("Here, the material sought to be subpoenaed may not be accessible by means other than § 1782, because none of the subpoena targets is a party to the pending litigation in Japan and thus may not be within the Japanese courts' jurisdictional reach.").

Here, the Canadian Action is already underway and none of the targets of the proposed subpoenas is a party, and the plaintiffs in that action have no intention of adding them as parties. Moreover, each is located in the United States and thus will be outside the jurisdictional reach of the Canadian Court.  (*See* January 22 Order (requesting aid from foreign tribunals to effectuate its discovery order).)  Accordingly, the plaintiffs in that case will be unable to obtain the requested discovery absent this Court's approval of the application.

### B.    The Canadian Court Has Explicitly Requested Assistance

In considering the second discretionary factor—the nature of the foreign tribunal and its receptivity to judicial assistance from a U.S. court—the relevant question is whether the foreign tribunal is "receptiv[e] . . . to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.

Here, the Superior Court of Justice has specifically *requested* this relief, thereby affirmatively demonstrating receptivity to the relief sought.  (*See* January 22 Order ¶ 32.)

### C.    Applicants Are Not Seeking To Circumvent Canadian Proof-Gathering Restrictions

Courts typically weigh the third factor against the Section 1782 applicant only when they find that the petition was brought in bad faith.  *In re Application of Hill*, No. M19-117, 05cv999996, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor." (quotation marks omitted)).

Here, far from circumventing the Canadian system, Applicants have already asked the Canadian Court to authorize the subpoenas *before* coming to this court.  (*See* January 22 Order ¶ 32; *see also* January 22 Order ¶ 33 ("[T]he within Order is granted in accordance with the practice and procedure of the Ontario Superior Court of Justice and, further, that Ontario Courts would honour a reciprocal form of request from a Court located in . . . the United States."); January 22 Order ¶ 34 ("[T]he Plaintiffs are authorized to seek permission to serve subpoenas in the courts of . . . the United States for relief consistent with this Order.").

Thus, the third factor thus weighs strongly in favor of authorizing the requested discovery.

**D.  The Requested Discovery Is Narrowly Tailored and Is Not Unduly Intrusive or Burdensome**

The fourth factor also weighs in favor of authorizing the requested discovery because it is narrowly tailored and in no way "unduly intrusive or burdensome."  *See Intel*, 542 U.S. at 265. Copies of the subpoena that Applicants seek permission to serve are annexed to the Declaration of Jonathan S. Sack as Exhibits 1-4.

The proposed subpoenas to the financial institutions—Citibank NA and HSBC Bank USA NA—request records relating to accounts held directly or indirectly by specific individuals and corporations, each of whom holds identified accounts at the financial institutions.  And the requests to Cadwalader, Wickersham & Taft LLP and Jonathan Wainwright, Esq. are narrowly tailored to include only targeted information and specifically excludes privileged information. Each of the requests is narrow and is neither unduly intrusive nor burdensome.[5]

---

[5]     The subpoenaed parties will have an opportunity, if they choose, to challenge the subpoenas once they are served, and therefore, they will not be prejudiced if the instant application is granted *ex parte*.  *See, e.g.*, *In re Ex Parte Application of Porsche Automobil Holding SE*, No. 15-417, 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016).

\*     \*     \*

Because all four discretionary factors weigh in favor of granting the present Section 1782 application, Applicants respectfully submits that the Court should grant the application.

## CONCLUSION

Applicants respectfully request that the Court endorse the Proposed Order annexed to the Notice of Motion, which grants Applicants leave to serve the subpoenas annexed to the Declaration of Jonathan S. Sack.

Dated: February 11, 2021
   New York, NY

        MORVILLO, ABRAMOWITZ, GRAND, IASON, & ANELLO PC

        By: */s/ Jonathan S. Sack*
           Jonathan S. Sack
           Joshua Bussen

        565 Fifth Avenue
        New York, New York 10017
        Tel: (212) 856-9600
        Fax: (212) 856-9494
        Email: jsack@maglaw.com
            jbussen@maglaw.com

        *Attorneys for Sakab Saudi Holding Company, Alpha Star Aviation Services Company, Enma Al Ared Real Estate Investment and Development Company, Kafa'at Business Solutions Company, Security Control Company, Armour Security Industrial Manufacturing Company, Saudi Technology & Security Comprehensive Control Company, Technology Control Company, New Dawn Contracting Company, and Sky Prime Investment Company*